FILED
United States Court of Appeals
Tenth Circuit

**March 16, 2011**

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MICHAEL PALMER,

      Plaintiff-Appellant,

v.

METROPOLITAN LIFE
INSURANCE COMPANY,

      Defendant-Appellee.

No. 10-3171
(D.C. No. 6:09-CV-01314-MLB-DWB)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **O'BRIEN**, **ANDERSON**, and **TACHA**, Circuit Judges.

---

Plaintiff Michael Palmer brought this action against Metropolitan Life

Insurance Company (MetLife) after MetLife terminated his disability benefits

under the Alltel Corporation Long-Term Disability Plan (Plan). The action

proceeded under the Employee Retirement Income Security Act of 1974 (ERISA),

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

which permits a plan participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The district court granted summary judgment for MetLife and denied Palmer's motion for summary judgment. It upheld MetLife's decision as plan administrator to terminate benefits, concluding that its determination that Palmer's alleged disability was due to a preexisting condition was not arbitrary and capricious. It further rejected Palmer's claim that MetLife owed him additional benefits due to an alleged underpayment during the benefit period. He appeals from this judgment, and we affirm.

## BACKGROUND

### 1. Plan Provisions

Alltel hired Palmer on June 1, 2005, as a Business Solutions Representative. His disability insurance under the Plan became effective July 1, 2005. Under the Plan, MetLife agreed to pay participants a monthly benefit upon presentation of satisfactory proof of a covered disability. The Plan contained two definitions of "disability," applicable to the first 24 months of covered disability and afterwards:

> There are two different types of disability, each with its own benefit levels. You are considered disabled and eligible for Plan benefits under the following circumstances:

- Either you are unable to perform all material duties of your occupation or you are able to perform parts of your job but suffer at least a 20% loss in income. This definition applies to the first 24 months of disability after your elimination period has been met.

- Either you are unable to perform any occupation for which you are reasonably qualified or you are able to perform parts of any job but suffer at least a 20% loss in income. This definition applies after the first 24 months of disability.

Aplt. App., Vol. III at A731.

The Plan also excluded benefits for a disability resulting from a pre-existing condition:

The Plan will not pay benefits under the following circumstances:

. . .

- your losses were caused by or resulted from preexisting conditions such as illnesses or injuries that began in the first 12 months of your effective date and for which you received medical treatment, consultation, care or services (including diagnostic measures), or prescription medicines or drugs in the three months prior to your effective date[.]

*Id.* at A732.

### 2. Initial Approval of Palmer's Claim

Palmer's last work day with Alltel was February 2, 2006. The next day, he underwent a total disc replacement. On July 11, 2006, he submitted a claim for long-term disability benefits to MetLife, alleging disability due to lower-back problems.

-3-

In processing this claim, MetLife sought his medical records for the period April 1, 2005, to June 30, 2005, to determine whether the claim fell within the Plan's exclusion for pre-existing conditions. Palmer's claim identified Dr. Marty Turner as his attending physician during the relevant time period. MetLife attempted to obtain his medical records from Dr. Turner's office. While Dr. Turner signed and returned a completed Attending Physician Statement form, his office did not provide the requested medical records. Instead, it sent a fax to MetLife stating "[t]he Medical records part of your request will be addressed by Smart Corporation on 8/22/06. That is our policy & we have a contract[.] No exception[.] Patient is aware as well." *Id.* at A626.

While awaiting Dr. Turner's records, MetLife obtained further information suggesting that Palmer's claim involved a pre-existing condition. A discharge summary dated February 5, 2006, described Palmer as "a 38-year-old male with a long history of low back pain, which increased with motor vehicle collision in 1999." *Id.* at A645. On September 1, 2006, having still not received the medical records from Dr. Turner's office, MetLife called the office and was informed verbally that Dr. Turner had seen Palmer four times during the relevant time period.

On September 13, 2006, MetLife received an invoice from Smart Document Solutions, LLC for the medical records from Dr. Turner's office. MetLife contacted Palmer two days later and advised him he was responsible for paying the

invoice. Palmer responded by stating his position that it was MetLife's responsibility to pay for the records if MetLife wanted them.

Although neither MetLife nor Palmer paid the invoice and MetLife did not receive Dr. Turner's records, a September 27, 2006, MetLife internal diary entry noted "Medical has been reviewed and claim is not pre-ex." *Id.*, Vol. II at A260. MetLife approved Palmer's claim for disability benefits by letter dated October 12, 2006. *Id.*, Vol. III at A601-03. The letter informed him that benefits became payable as of August 2, 2006, after his satisfaction of the required 180-day waiting period.[1]

### 3. The Two-Year Disability Review

MetLife's benefits letter further informed Palmer that

> [t]o continue to qualify for disability benefits until August 1, 2008, you must continue to satisfy the definition of disability and all other requirements of your plan. Benefits may continue beyond August 1, 2008 if you continue to satisfy the definition of disability solely due to other non-limited medical condition(s) and other plan requirements.

*Id.* at A602.

On January 4, 2008, MetLife wrote Palmer, reminding him of the definition of disability and that "[i]n order for you to continue to receive benefits beyond

---

[1]     Some of the language in the letter is predicated on MetLife's determination that benefits based on Palmer's alleged disability were limited to a two-year period because the disability involved a "neuromusculoskeletal and soft tissue disorder." Aplt. App., Vol. III, at A602. MetLife apparently later reconsidered this position due to evidence of radiculopathy. *See id.*, Vol. II at A289. The two-year soft tissue injury limitation is not at issue in this appeal.

[the expiration of the two-year initial benefit period on] August 1, 2008, you must be totally disabled from any occupation." *Id.*, Vol. II at A492. The letter noted that Palmer's continued receipt of benefits would depend on his ability to "continue to satisfy the definition of disability and all other requirements of your plan." *Id.*[2]

Palmer hired an attorney, who notified MetLife around February 8, 2008, that Palmer had been underpaid disability benefits. The attorney noted that benefits had only been calculated based on his base salary, while the Plan required payment based on both base salary and commissions. MetLife did not immediately resolve this problem, but instead proceeded with its review of Palmer's claim. In the course of its review, MetLife noted on February 13, 2008, that "per review of claim pre-ex investigation is needed." *Id.* at A315. It further observed that Dr. Turner's records had never been received.

The same day, MetLife telephoned Palmer about the medical records. He indicated he had them and would send them to MetLife. He faxed Dr. Turner's office notes for the period April 1, 2005, through June 30, 2005, and a pharmacy profile to MetLife. Dr. Turner's records revealed that he had indeed seen Palmer for back problems on four occasions during the relevant time period. Based on its review of the records, MetLife terminated Palmer's disability benefits

---

[2]     MetLife scheduled a functional capacity exam in connection with its two-year review but terminated Palmer's benefits before it could be completed.

effective March 1, 2008, as an ineligible preexisting condition. It upheld the

termination decision through the administrative appeal process.

## ANALYSIS

### 1. Standard of Review

The parties disagree on the standard of review applicable to this appeal.

They acknowledge the general principle that we review the district court's entry of

summary judgment de novo, applying the same legal standard it used. *See*

*Adamson v. Unum Life Ins. Co.*, 455 F.3d 1209, 1212 (10th Cir. 2006). Neither

challenges the further rule that

> [w]here, as here, the parties in an ERISA case both moved for
> summary judgment and stipulated that no trial is necessary, summary
> judgment is merely a vehicle for deciding the case; the factual
> determination of eligibility for benefits is decided solely on the
> administrative record, and the non-moving party is not entitled to the
> usual inferences in its favor.

*LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment &*

*Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010) (quotation omitted).

The parties' dispute about the standard of review concerns a more

fundamental matter: the appropriate standard to be applied to MetLife's decision

to terminate benefits. Both acknowledge the general principle that MetLife's

action should be reviewed *de novo* unless the Plan gives MetLife "discretionary

authority to determine eligibility for benefits or to construe the terms of the plan,"

*id.* (quotation omitted), and that if the Plan provides for such discretionary

-7-

authority "we employ a deferential standard of review, asking only whether the denial of benefits was arbitrary and capricious," *id.* (quotation omitted). There is no dispute that the Plan provides such discretionary authority.

Palmer argues, however, that we owe no deference to MetLife's decision in this instance because MetLife committed "procedural irregularities . . . that require us to apply the same de novo review that would be required if discretion was not vested in MetLife." *Id.* (quotation omitted). Palmer cites two such alleged irregularities: (1) MetLife's "obtain[ing] medical information in a manner contrary to plan terms," Aplt. Opening Br. at 14, and (2) its issuance of a determination "beyond the ERISA-mandated time limits," *id.*

We have applied the "procedural irregularity" exception where the plan administrator either never issued a decision, or issued a decision "substantially outside the time period within which the Plan vested it with discretion to interpret and apply the Plan." *LaAsmar*, 605 F.3d at 799. Palmer cites no authority that would trigger de novo review merely because MetLife allegedly obtained medical information in a manner contrary to plan terms. In any event, he did not argue in district court for a de novo standard of review based on MetLife's allegedly improper request for medical information. We therefore decline to consider that portion of his argument, made for the first time on appeal. *See Curtis v. Chester*, 626 F.3d 540, 548 (10th Cir. 2010) ("Absent extraordinary circumstances, we will not consider arguments raised for the first time on appeal.") (quotation omitted).

As for his argument concerning the ERISA-mandated time limits, even if the alleged irregularity falls within the parameters of *LaAsmar*, Palmer's argument rests on an assumption that MetLife issued an untimely initial decision on benefits rather than a benefit termination. Because (as will be seen) we do not agree with this assumption, we reject the resulting argument involving the standard of review as well. We will therefore apply the arbitrary and capricious standard, without modification for procedural irregularities, to MetLife's decision.

## 2. Scope of Merits Issues

It may be helpful to begin our analysis by stating what is *not* at issue. Palmer does not contest that his medical visits with Dr. Turner during the time period between April 1, 2005, and June 30, 2005, qualified his back problems as a "pre-existing condition" under the terms of the Plan. For its part, MetLife does not contest that if Palmer were entitled to benefits, their amount should have been calculated based on his commissions as well as his base salary. The narrow issues actually at stake are (1) whether MetLife could, after previously approving and paying benefits, terminate them (a) based on a finding of a pre-existing condition (b) discovered through records obtained from Palmer that were in existence at the time it initially awarded benefits but not obtained by MetLife at that point; and (2) whether MetLife was required to compensate Palmer for an underpayment that occurred during the time it was mistakenly paying benefits.

### 3. MetLife's Termination of Benefits

Palmer contends that MetLife's termination of his benefits was improper for two reasons. He contends that MetLife's actions represented an unauthorized and untimely second initial determination of his claim. He also argues that MetLife improperly obtained and relied upon his prior medical records in reaching its decision.

### A. Authorization for Termination

Palmer argues that MetLife's decision violated ERISA because MetLife improperly "attempted to reverse its initial decision that [his] claim was not precluded by the preexisting condition." Aplt. Opening Br. at 19.[3] He contends that by this action, MetLife wrongfully made "a new and different decision on the same facts it had for its initial decision." *Id.* at 21.

The district court correctly determined under ERISA that MetLife's initial decision in Palmer's favor on the pre-existing condition issue did not preclude MetLife from revisiting this issue and reaching an opposite result. This is true

---

[3]     Palmer does not argue that MetLife was prohibited from revisiting the pre-existing condition issue unless specifically authorized by language in the Plan to conduct a review *of that issue*. Instead, he argues (apparently under general ERISA principles) that MetLife should "not get a second bite at the apple when its first decision was simply contrary to the facts." Aplt. Opening Br. at 21 (quotation omitted). His arguments concerning language in the Plan center on whether it authorized MetLife to request and use existing medical records in its review. We confine our discussion to the contentions he has specifically raised and developed on appeal.

whether or not MetLife relied on additional evidence concerning the pre-existing condition issue when it reached its decision to terminate benefits.

We find our prior case of *Kimber v. Thiokol Corp.*, 196 F.3d 1092 (10th Cir. 1999), strongly persuasive on this issue. In *Kimber*, the administrator of a disability plan granted the plaintiff insured disability benefits based upon evidence of his diabetic symptoms. *Id.* at 1096. Upon further review, however, the administrator changed its mind: it now determined the insured had not adequately demonstrated medical evidence of his total disability. The administrator therefore requested further proof of disability before continuing to pay benefits. When such evidence was not forthcoming, it terminated benefits. *Id.* The insured appealed, providing additional medical evidence. Finding this evidence insufficient to overturn its earlier decision on the issue of physical disability, the administrator upheld the denial of benefits for a physical disability but did grant a limited, two-year benefit based on the insured's mental condition. On appeal, we affirmed the administrator's actions, noting that "[a] one-time determination of eligibility for benefits under the Plan does not foreclose subsequent principled review." *Id.* at 1098.

*Kimber* supports the ability of a plan administrator to revisit disability issues and to reach a different result even in the absence of evidence of medical improvement, so long as the administrator's review is "principled," that is, authorized under ERISA and conducted in accordance with its principles. *Id.*

A contrary result "would basically prohibit a plan fiduciary from ever terminating benefits if it later discovered evidence that the ERISA plaintiff was not disabled at the time of the initial grant of benefits" and "would have a chilling effect on the promptness of granting initial benefits in the first place." *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 274 (5th Cir. 2004).

While *Kimber* concerned medical evidence of disability, the Fourth Circuit has applied similar principles to an exclusion for pre-existing conditions. *See Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 239 (4th Cir. 2008) ("[T]he 'mistake' by [insurer] in failing to initially assert the Pre-Existing Conditions Limitation cannot estop [insurer] from asserting that exclusion under some notion of waiver because [insurer] is required to administer the Plan as written, including the Pre-Existing Conditions Limitation."). We agree with this reasoning and therefore conclude that MetLife's initial failure to assert the pre-existing condition provision did not prevent a later assertion of the condition in connection with MetLife's review of Palmer's continued entitlement to benefits.

Palmer further argues, however, that MetLife's termination decision was in fact a "(second) initial determination" that was untimely under the deadlines for initial determinations of claims established by 29 C.F.R. § 2560.503-1(f)(3). *See* Aplt. Opening Br. at 22. Palmer's argument rests on an artificial dichotomy: he assumes MetLife was only authorized to avoid paying continued benefits if it either issued an initial determination or terminated benefits to which he was

-12-

initially entitled. *See* Aplt. App., Vol. III at A733 (defining when benefit payments may end); A776 (same). As we have seen, however, benefits could also terminate as the result of a principled review, such as the review MetLife conducted in connection with its two-year redetermination of Palmer's disability. We therefore reject this argument.

### B. Use of Medical Information

As we have noted, a disability review must be "principled," that is, authorized under ERISA and conducted in accordance with its terms. Palmer claims that MetLife's actions were essentially unprincipled because the Plan only permitted MetLife to request and use "current" medical records in reaching a decision to terminate benefits. He argues "current" means "recent," *see* Aplt. Opening Br. at 19, and therefore MetLife was not authorized to request or rely on records that existed at the time it initially approved his claim.

We note, first, that the Plan provisions Palmer cites only concern MetLife's right to *obtain* current medical information from him, not use of that information once it has been obtained. By voluntarily providing MetLife with the records of his consultations with Dr. Turner, Palmer waived any claim that MetLife was unauthorized to obtain the records from him. *Cf. Allison v. UNUM Life Ins. Co.*, 381 F.3d 1015, 1024 (10th Cir. 2004) (refusing to consider whether insurer acted beyond scope of plan by (a) requesting additional releases for medical information dating nearly two years before coverage period, (b) resulting from insurer's initial

miscalculation of pre-existing condition period, then (c) denying benefits based on pre-existing condition when releases were not received; where claimant's attorney "did not protest" scope of releases and did not "write back and indicate his refusal to comply with the extensive request").[4]

Moreover, having received relevant and unquestionably authentic records in connection with its review, MetLife did not act unreasonably in relying on them. The Plan did not restrict MetLife's use of medical records in connection with a principled review. Under the Plan, MetLife had the right to consider "Proof" of disability in support of a claim, which was defined to include information relating to "the claimant's right to receive payment." Aplt. App., Vol. III at A764. We therefore reject Palmer's claim that MetLife conducted its review in an unprincipled fashion by obtaining and relying on records of his previous consultations with Dr. Turner.

### 4. Underpayment of Benefits

Finally, Palmer argues that if his disability benefits were indeed terminated effective March 1, 2008, he was entitled to the full amount of benefits that had accrued to that point and that had become due and payable upon MetLife's initial approval of his claim. MetLife does not seek recovery of benefits already paid to

---

[4]    Our determination on this issue forecloses Palmer's additional argument that MetLife's letter to him about its right to seek records to demonstrate his continued eligibility could not have expanded its authorization under the Plan to request "old" or "existing" medical records as well as "future" records. *See* Aplt. Opening Br. at 23-24.

Palmer. But since there is no dispute that MetLife failed to pay him benefits calculated based on both his base salary and commissions, as required by the Plan, he contends MetLife must make good the underpayment to the date of termination.

The district court addressed this issue briefly, reasoning as follows:

[P]laintiff seeks payment of additional benefits on the basis that MetLife miscalculated the amount of his payments while he was receiving benefits. MetLife responds that plaintiff is not eligible for a recalculation because the benefits plaintiff received were overpayments and plaintiff should not have received those payments because his condition was preexisting. The court finds that this decision was reasonable based on the record.

Aplt. App., Vol. I at A159.

Palmer fails to point us to any precedent in support of his argument that MetLife's erroneous determination obligates it to pay him benefits that are unquestionably barred by the Plan language. He cannot claim benefits under the Plan's plain language, which excludes such payment for what he concedes is a pre-existing condition. At best, he has an argument that MetLife is estopped by its own prior erroneous determination and its payment of benefits from denying his entitlement to the full amount of those benefits.

Our cases hold that coverage under a plan subject to ERISA cannot be expanded by estoppel. The insured's reliance on an administrator's oral and written statements cannot create coverage, because it is the language of the plan that controls the entitlement to benefits. *See, e.g., Alexander v. Anheuser-Busch Cos.*, 990 F.2d 536, 539 (10th Cir. 1993); *Miller v. Coastal Corp.*, 978 F.2d 622,

624-25 (10th Cir. 1992) (miscalculation of estimated benefits in annual statements not binding under equitable estoppel theory). This case differs somewhat from these precedents, in that here the claim for additional benefits is based on MetLife's own formal decision awarding benefits. But even if estoppel may be predicated on such a decision, Palmer fails as a matter of law to show his entitlement to it.

> In order to make out a claim of estoppel under ERISA, there must be:
>
> 1) conduct or language amounting to a representation of material fact; 2) awareness of the true facts by the party to be estopped; 3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended; 4) unawareness of the true facts by the party asserting the estoppel; and 5) detrimental and justifiable reliance by the party asserting estoppel on the representation.

*Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1298 (6th Cir. 1991).

Under the facts of record, Palmer cannot meet either the fourth or fifth criteria for estoppel. He does not deny (and cannot reasonably deny) that his back problems constituted a pre-existing condition under the terms of the Plan. During the time MetLife was paying him benefits for his condition, he was on notice of both the Plan's definition of a pre-existing condition and of the visits he had made to Dr. Turner for his back condition during the disqualification period. While he received a windfall from MetLife's inexplicably favorable decision on his pre-existing condition, he fails to show an equitable entitlement to additional

-16-

benefits based on any sort of reasonable reliance.  We therefore affirm the district court's decision denying him additional benefits.

The judgment of the district court is AFFIRMED.

Entered for the Court


Deanell Reece Tacha
Circuit Judge