FILED
United States Court of Appeals
Tenth Circuit

July 2, 2013

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

WADE JENSEN; DONALD D. GOFF,
individually and on behalf of all others
similarly situated,

      Plaintiffs-Appellants,

v.

SOLVAY CHEMICALS, INC.;
SOLVAY AMERICA, INC.; SOLVAY
AMERICA COMPANIES PENSION
PLAN,

      Defendants-Appellees.

No. 11-8092

_____

**Appeal from the United States District Court
for the District of Wyoming
(D.C. No. 2:06-CV-00273-ABJ)**

_____

Stephen R. Bruce, Stephen R. Bruce Law Offices, Washington, D.C. (Allison C. Pienta, Stephen R. Bruce Law Offices, Washington, D.C., and Richard H. Honaker, Honaker Law Offices, LC, Rock Springs, Wyoming, with him on the briefs) for Plaintiffs-Appellants.

J. Richard Hammett, Baker & McKenzie LLP, Houston, Texas (Scott M. Nelson, Baker & McKenzie LLP, Houston, Texas, and Paul J. Hickey and O'Kelley H. Pearson, Hickey & Evans, LLP, Cheyenne, Wyoming, with him on the brief), for Defendants-Appellees.

_____

Before **KELLY**, **MURPHY**, and **GORSUCH**, Circuit Judges.

_____

**GORSUCH**, Circuit Judge.

Solvay could never be sure just how much its pension plan would affect its bottom line. Because it promised retirees a defined benefit, the company was on the hook to cover the difference whenever the plan's performance fell short. In 2000, Solvay didn't have to contribute anything. But in 2003, it had to meet a $23 million shortfall. Displeased with the volatility of this arrangement — not to mention the cost — Solvay decided to change how it provided retirement benefits. It converted its defined *benefit* plan into a so-called "cash balance" plan that in essence required only a defined *contribution* from the company. This gave the company what it wanted, but many employees didn't like the change: among other things, it resulted in the elimination of popular early retirement subsidies.

Federal law didn't prohibit Solvay, both the plan's sponsor and its administrator, from making this move, but it did require the company to provide its employees with detailed notice of the changes. *See* ERISA § 204(h), 29 U.S.C. § 1054(h). In the company's § 204(h) notice, a six-page document it distributed to employees, Solvay tried to meet this challenge.

Trouble soon arose. Employees complained that the notice didn't explain a variety of things well enough to meet the statute's specifications, including what early retirement subsidies already existed under their preexisting plan. The employees brought suit and, in the end, this court agreed that Solvay violated its

§ 204(h) notice obligations when it came to describing the company's preexisting early retirement subsidies, even while finding the company's notice sufficient in all other respects. After reaching its holding, this court remanded the case to the district court to determine whether and what relief was warranted. *See Jensen v. Solvay Chems., Inc.*, 625 F.3d 641 (10th Cir. 2010).

Now back before the district court, the employees sought the return of their lost early retirement benefits. As remedy for Solvay's defective notice, they said the company should restore the benefits in whole. But a district court's discretion to award so much relief for a § 204(h) notice violation is extremely limited: a district court may award "the benefits to which [the employees] would have been entitled" but only on a showing that the company's notice failure was "egregious." 29 U.S.C. § 1054(h)(6)(A).

What qualifies as "egregious"? Happily, the statute defines the term for us and two of the listed meanings are relevant here. First, a company's failure may be said to be "egregious" if the failure was "within [its] control" and was "intentional." *Id.* § 1054(h)(6)(B)(i). Second, a company's failure may be deemed "egregious" if the failure was "within [its] control" and the company failed "to promptly provide the required notice or information after [it] discover[ed] an unintentional failure to meet the requirements of" § 204(h). *Id.*

After a bench trial the district court found Solvay's failure wasn't egregious under either of these meanings. Far from intentionally failing to

- 3 -

disclose information on early-retirement benefits, the court found that "Solvay did its best to comply with" § 204(h). The court further found that "the earliest time Solvay discovered its failure was after the filing of this case" and that the company "sought the advice of its ERISA counsel to ensure it remained compliant" as soon as it discovered the problem.

The employees now appeal again, asking us to overturn both of these holdings.

In the first place, they argue the district court misunderstood the term "intentional." The employees say the district court effectively required them to prove Solvay intended to break the law, even though on their reading of the statute they only had to show that Solvay intentionally failed to make its statutorily required disclosures. This argument, however, ultimately proves beside the point. The district court's findings make plain that Solvay's failure wasn't "intentional" even under the definition the employees advance. The district court found that the company wanted to make all the disclosures the law required, that the company's omission was *accidental*, no more than an oversight in the process of drafting a complex statutorily mandated notice.

Retreating, the employees say this finding is itself in error. To overturn a district court's factual finding, however, the employees must show that it isn't just wrong but *clearly* wrong, so wrong as to be "pellucid to any objective observer." *Watson v. United States*, 485 F.3d 1100, 1108 (10th Cir. 2007). And

this they are unable to do. Solvay executives testified that they never intended to leave out details on existing early-retirement benefits. Solvay's outside lawyers and actuaries testified that their marching orders were to ensure the § 204(h) notice contained everything the law required. They swore, too, that no Solvay executive ever pushed back against their advice and recommendations on what to include in the § 204(h) notice.

To be sure, the employees presented competing evidence. Among other things, they suggested Solvay had a financial motive to keep information under wraps, and they observed that at least a few Solvay executives understood that the § 204(h) notice had to explain how retirement benefits were calculated under the old plan. But we simply cannot say that this competing evidence forces any objective viewer to the conclusion that the district court got the facts wrong. District courts often (almost always) must choose between competing factual accounts. In this case, the district court's choice wasn't just rational and affirmable: if anything, it was consistent with the greater weight of the evidence presented.

The employees reply that the district court improperly took into account testimony by one Solvay employee that the company wouldn't "intentionally do anything to not comply with the law." This, the employees argue, ran afoul of Federal Rule of Evidence 404(a)(1) and its general prohibition against using character evidence "to prove that on a particular occasion [a] person acted in

accordance with" that character. But even assuming the district court impermissibly entertained character evidence as the employees allege, we are confident the error was harmless. As we have seen, there was considerably more (admissible) evidence suggesting that Solvay's goal in this particular case (quite apart from the character of its management generally) was to comply with the law. *See McCue v. State of Kan., Dep't of Human Res.*, 165 F.3d 784, 790 (10th Cir. 1999) ("[A] new trial should not be granted for an [evidentiary] error 'unless refusal to take such action appears to the court inconsistent with substantial justice.'" (citing Fed. R. Civ. P. 61)).

Even if they can't show Solvay's omission was intentional, the employees argue they can show the company engaged in "egregious" misconduct because it knew of the defect in its § 204(h) notice long ago and failed to correct it promptly. But on this score too the district court's findings are determinative. The district court found that Solvay didn't discover its failure until after this litigation began. And nothing suggests that finding was clearly erroneous. To the contrary, considerable evidence in the record suggests that no earlier employee complaint or inquiry alerted the company to the § 204(h) notice's deficiency.

Without a path to the extraordinary relief they seek under § 204(h), the employees turn to ERISA § 102(a). *See* 29 U.S.C. § 1022(a). They remind us that Solvay intended its § 204(h) notice to satisfy § 102(a) as well, a provision that required the company to furnish the employees with "a summary of any

- 6 -

material modification in the terms of the plan." And, the employees stress, § 102(a) doesn't require a showing of egregiousness to win relief. As they point out, they are entitled to recover "appropriate equitable relief" for any violation of § 102(a). *See* ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

To this new line of attack, Solvay cries foul. The company says the § 102(a) issue just isn't in the case. It isn't, the company insists, because when this court remanded the case to the district court after its last visit here, we instructed the district court *only* to take up the § 204(h) issue.

Fortunately, to resolve this appeal we don't have to address the company's objection — or the spirited response it has invited from the employees. We don't because on remand the district court assumed that the § 102(a) issue was properly before it and proceeded to hold that the employees couldn't secure relief under its terms either. The district court expressly found that the employees knew and understood all along the effect the new plan would have on their early retirement benefits, even if the company's notice happened to be statutorily deficient. It found, too, that Solvay didn't act in bad faith and that it didn't "substantively harm" the employees. In light of these findings, it concluded the employees weren't entitled to equitable relief.

To be sure, the employees dispute this holding. But thanks to the Supreme Court's decision in *Cigna Corp. v. Amara*, 131 S. Ct. 1866 (2011), we know that § 502(a)(3)'s authorization of "appropriate equitable relief" incorporates "those

categories of relief that, traditionally speaking (*i.e.*, prior to the merger of law and equity) were typically available in equity." *Id.* at 1878 (emphasis omitted) (internal quotation marks omitted). We know, too, that the statute incorporates whatever requirements "come from the law of equity" when "the specific remedy being contemplated imposes" them. *Id.* at 1881. And we know that plaintiffs who seek "the remedy of estoppel" must demonstrate that "the defendant's statement 'in truth, influenced the conduct of' the plaintiff, causing 'prejudice.'" *Id.* (alteration omitted) (emphasis omitted) (quoting James W. Eaton, *Handbook of Equity Jurisprudence* § 61, at 175 (1901)); *see also* 3 Spencer W. Symons, *Pomeroy's Equity Jurisprudence* § 810, at 219 (5th ed. 1941) ("If, at the time when [the party claiming the benefit of the estoppel] acted, such party had knowledge of the truth, . . . he cannot claim to have been misled by relying upon the representation or concealment."). In light of all this, we know at the very least that the employees in our case cannot obtain an estoppel remedy. The district court found that Solvay's deficiency *did not* influence their conduct because they already knew they were losing benefits under the new plan, and the employees don't challenge that finding on appeal.

Of course, the employees might be entitled to *other* equitable remedies the district court's findings do not otherwise foreclose. But we just don't know whether that's the case. We don't because the plaintiffs didn't tell the district court *which* other forms of equitable relief (if any) they sought for the violation of

§ 102(a) they claimed. In these circumstances, it seems to us the plaintiffs forfeited any argument that they are eligible for another remedy. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011) ("[W]e will reverse a district court's judgment on the basis of a forfeited theory only if failing to do so would entrench a plainly erroneous result."). Worse still, even now before us the employees do not tell us which other forms of equitable relief they seek, leaving their argument inadequately developed in yet another way. *See United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004); *Craven v. Univ. of Colo. Hosp. Auth.*, 260 F.3d 1218, 1226 (10th Cir. 2001). The employees may secretly harbor a wish for some form of equitable relief not foreclosed by the district court's findings, but they have yet to identify it to anyone else after six-and-a-half years of litigation and to know that much is to know it is time to call this matter to a close.

The judgment is affirmed.