**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 11, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

TRENT LEBAHN; WENDY
LEBAHN,

      Plaintiffs - Appellants,

v.

NATIONAL FARMERS UNION
UNIFORM PENSION PLAN;
PENSION COMMITTEE OF THE
NATIONAL FARMERS UNION
UNIFORM PENSION PLAN;
NATIONAL FARMERS UNION
PENSION CONSULTANTS,

      Defendants - Appellees.

No. 15-3201

_____

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 6:15-CV-01065-MLB-KGG)**
_____

Randall K. Rathbun, Depew Gillen Rathbun & McInteer, LC, Wichita, Kansas, for Plaintiffs-Appellants.

Jessica L. Skladzien, Lewis Brisbois Bisgaard & Smith, Wichita, Kansas (Alan L. Rupe, Lewis Brisbois Bisgaard & Smith, Wichita, Kansas, on the brief), for Defendants-Appellees.
_____

Before **HOLMES**, **MURPHY**, and **BACHARACH**, Circuit Judges.
_____

**BACHARACH**, Circuit Judge.
_____

This appeal involves claims under the Employee Retirement Income Security Act of 1974, commonly known as ERISA. Invoking ERISA, Mr. Trent Lebahn and his wife claim that a pension-plan consultant breached a fiduciary duty by misstating the amount of the monthly pension payments that Mr. Lebahn would receive if he were to retire. But under ERISA, the plan consultant could be considered a fiduciary only if she exercised discretionary authority over the plan's administration. On appeal, we ask: Does a consultant exercise discretionary authority in administering the plan simply by making a calculation of benefits at the request of a plan participant? We conclude that a consultant does not exercise discretionary authority under these circumstances.

## I.    The plan consultant's computation error resulted in Mr. Lebahn's premature retirement, prompting Mr. Lebahn to sue.

Hoping to retire, Mr. Lebahn contacted Ms. Eloise Owens, a consultant hired by his company's pension plan, to ask what his monthly pension payment would be. Ms. Owens told Mr. Lebahn that if he retired soon, he would be entitled to $8,444.18 per month. At Mr. Lebahn's request, Ms. Owens checked her calculations and assured Mr. Lebahn that the figure she had quoted was correct. Mr. Lebahn then retired and soon began receiving monthly checks of $8,444.18.

But Ms. Owens' calculations proved to be too good to be true. Shortly after Mr. Lebahn retired, a representative of the pension plan

contacted Mr. Lebahn and told him that he was being overpaid by almost $5,000 per month. A pension-plan attorney then told Mr. Lebahn that he would need to return over $43,000 in overpayments that he had already received. Unable to retire on his true pension benefit of $3,653.78 per month, Mr. Lebahn tried to go back to work, but he was unable to find a suitable job.

Mr. Lebahn and his wife then sued under ERISA.[1] The Lebahns alleged that in incorrectly representing Mr. Lebahn's benefits and failing to pay Mr. Lebahn in accordance with those representations, the pension plan, the pension committee, and "National Farmers Union Pension Consultants" incurred ERISA liability under theories of breach of fiduciary duty and equitable estoppel. On the defendants' motion, the district court dismissed the complaint for failure to state a valid claim. The Lebahns appeal this dismissal, and we affirm.

## II. We affirm the dismissal of the Lebahns' claims for breach of fiduciary duty and equitable estoppel.

On appeal, the Lebahns challenge the dismissal of their claims for breach of fiduciary duty and equitable estoppel. We reject each challenge.

We first address the Lebahns' claim for breach of fiduciary duty. For this claim, the Lebahns must show that the defendants were ERISA

---

[1] Mr. Lebahn had earlier sued Ms. Owens for negligent misrepresentation. That suit was dismissed based on preemption, and we affirmed the dismissal. *Lebahn v. Owens*, 813 F.3d 1300, 1302 (10th Cir. 2016).

3

fiduciaries. Although Ms. Owens is not named as a defendant, the Lebahns argue that she was a fiduciary of the plan, rendering the named defendants liable for Ms. Owens' breach of her fiduciary duty.[2] The district court rejected this position on the ground that Ms. Owens had not acted as an ERISA fiduciary when calculating pension benefits. We agree: Because Ms. Owens lacked discretionary authority in administering the pension plan, she lacked fiduciary status. And in the absence of fiduciary status of the wrongdoer, the claim for breach of fiduciary duty was properly dismissed.

The Lebahns' claim of equitable estoppel was also properly dismissed. In dismissing this claim, the district court reasoned that the Lebahns had failed to plead facts satisfying two of the five elements of equitable estoppel: awareness of the true facts and justifiable reliance. On appeal, the Lebahns do not challenge the district court's conclusion that they failed to adequately plead justifiable reliance. Because the Lebahns fail to challenge one of the grounds relied on by the district court, we affirm the dismissal of the equitable estoppel claim.

---

[2]     The three defendants are the National Farmers Union Uniform Pension Plan, the Pension Committee of the National Farmers Uniform Pension Plan, and the National Farmers Union Pension Consultants. But in suing these entities, the Lebahns rely solely on Ms. Owens' miscalculation of pension benefits. Because we conclude that Ms. Owens was not a plan fiduciary, we need not decide whether her fiduciary status could support liability of the three named defendants.

**III. Our review of the dismissal is de novo.**

We review de novo a dismissal under Federal Rule of Civil Procedure 12(b)(6), applying the same legal standard used by the district court. *Mocek v. City of Albuquerque*, 813 F.3d 912, 921 (10th Cir. 2015). Under that standard, we inquire whether the complaint contains factual allegations that "state a claim to relief that is plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is not enough for the plaintiff to plead "labels and conclusions" or to provide "a formulaic recitation of the elements of a cause of action." *Khalik*, 671 F.3d at 1190-91 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).[3]

---

[3]     Notwithstanding the Lebahns' protestations to the contrary, there is no special rule limiting dismissal of ERISA claims under Rule 12(b)(6). *See, e.g.*, *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1231, 1233 (10th Cir. 2002) (applying generally applicable pleading standards in reviewing the dismissal of an ERISA claim for breach of fiduciary duty).

**IV. The Lebahns failed to plead facts showing that Ms. Owens was a plan fiduciary.**

The Lebahns argue that Ms. Owens was a plan fiduciary under ERISA. We disagree.

**A. ERISA's definition of a functional fiduciary requires discretionary authority or discretionary responsibility over plan administration.**

To plead a breach of fiduciary duty, the Lebahns must adequately allege fiduciary status of the wrongdoer. ERISA § 409, 29 U.S.C. § 1109(a) (rendering personally liable "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter"). In their complaint, the Lebahns alleged that Ms. Owens was responsible for calculating and reporting pension benefits. That responsibility, the Lebahns argue, is sufficient to characterize Ms. Owens as a plan fiduciary under ERISA. We disagree. In our view, calculating and reporting pension benefits, without more, does not establish fiduciary status under ERISA.

There are two types of ERISA fiduciaries: named fiduciaries and functional fiduciaries. 29 U.S.C. § 1102(a) (named fiduciaries); 29 U.S.C. § 1002(21)(A) (functional fiduciaries). The Lebahns invoke only the functional-fiduciary provision.

Although the functional-fiduciary provision prescribes three means of becoming a functional fiduciary, the Lebahns focus on only one of

6

these[4]: "[A] person is a fiduciary with respect to a plan to the extent . . . he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).[5] Under this provision, fiduciary status requires authority or responsibility that is discretionary, which entails "the freedom to decide what should be done in a particular situation." "Discretion," *New Oxford American Dictionary* (3d ed. 2010). In our view, conducting a routine computation, as required by one's job, does not inherently require discretion. *See Schmidt v. Sheet Metal Workers' Natl. Pension Fund*, 128 F.3d 541, 546-47 (7th Cir. 1997) (holding that an employee who sent the wrong form to a pension beneficiary, causing the beneficiary to forfeit his pension benefits, was not a fiduciary because the employee's tasks were "ministerial").

The Department of Labor has expressed the same view in two interpretive bulletins discussing the functional-fiduciary provision, § 1002(21)(A).

In 29 C.F.R. § 2509.75–8, the Department of Labor noted that a person who performs administrative functions, such as calculating benefits,

---

[4]     The other two means involve (1) providing investment advice and (2) having discretionary authority or control over management of the plan or its assets. 29 U.S.C. § 1002(21)(A)(i)-(ii). The Lebahns do not rely on these two means of becoming a functional fiduciary.

[5]     The defendants argue that the Lebahns forfeited any argument based on this statutory provision. Because we conclude that Ms. Owens' actions did not fall within this functional-fiduciary definition, we need not address the defendants' forfeiture argument.

does not automatically have discretionary authority and does not become a fiduciary without something more:

> Only persons who perform one or more of the functions described in [§ 1002(21)(A)] with respect to an employee benefit plan are fiduciaries. Therefore, a person who performs purely ministerial functions such as the types described above [which include "calculation of benefits" and "[p]rocessing of claims"] for an employee benefit plan within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary because such person does not have discretionary authority or discretionary control respecting management of the plan, does not exercise any authority or control respecting management or disposition of the assets of the plan, and does not render investment advice with respect to any money or other property of the plan and has no authority or responsibility to do so.

29 C.F.R. § 2509.75–8 at D-2.

Similarly, in 29 C.F.R. § 2509.75–5, the Department of Labor interpreted the functional-fiduciary provision to exclude from fiduciary status persons who

- provide legal, accounting, actuarial, or consulting services but

- lack discretionary authority and do not offer investment advice to the plan.

29 C.F.R. § 2509.75–5 at D-1.

In these two interpretive bulletins, the Department of Labor expressed the view that typical consulting services—which would include the calculation of pension benefits—are not per se discretionary.

The Lebahns dispute this reading of the statute, arguing that one can become a fiduciary by conveying information about plan benefits to a plan

8

beneficiary. But the statutory provision at issue restricts fiduciary status to acts involving authority or responsibility to engage in a discretionary act of plan administration. *See* 29 U.S.C. § 1002(21)(A). The interpretative bulletins apply this provision in a common-sense way, concluding that the calculation and reporting of benefits based on preset formulas do not involve acts of discretion.[6]

To support their position, the Lebahns rely on *Varity Corp. v. Howe*, 516 U.S. 489 (1996), and *Moore v. Lafayette Life Insurance Co.*, 458 F.3d 416 (6th Cir. 2006). But these opinions have no bearing here, for neither opinion involves an assertion of fiduciary status based on discretionary authority or responsibility over plan administration.

*Varity* concerned an ERISA suit for breach of fiduciary duty that had been initiated by employees participating in their employer's welfare benefit plan. *Varity*, 516 U.S. at 492. The Supreme Court held that the employer was acting as an ERISA fiduciary under § 1002(21)(A)(iii) when the employer misled the employees about their likely future benefits under the plan. *Id.* at 503.

But in *Varity*, the Court was not concerned with the meaning of the term "discretionary." Instead, the Court was addressing whether the

---

[6] The parties do not argue that the statute is ambiguous, but we would regard the Department of Labor's interpretive bulletins as persuasive even if the statute were ambiguous. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

9

defendant's actions involved "plan administration." *Id.* at 502-05. The Court apparently assumed that the employer had discretionary authority, a safe assumption in light of the facts. The employer had called a special meeting of the employee-beneficiaries and conveyed to them false information about a new subsidiary's prospects to entice employees to transfer to the new subsidiary. *Id.* at 493-94. The meeting was intended to effectuate an administrative change initiated by the employer. And unlike Ms. Owens, the employer in *Varity* was not calculating future plan benefits according to a formula. Instead, the employer was predicting future business and pension performance, an undertaking that involves considerable decision-making. *Id.* As a result, *Varity* does not affect our inquiry into whether Ms. Owens' duties involved discretionary authority.

The Lebahns also rely on the Sixth Circuit's opinion in *Moore v. Lafayette Life Insurance Co.*, which held that "providing plan participants with materially misleading information" constitutes a breach of fiduciary duty. 458 F.3d 417, 432 (6th Cir. 2006); *see also Drennan v. Gen. Motors Corp.*, 977 F.2d 246, 251 (6th Cir. 1992) (stating, in the context of discussing a fiduciary's duties, that furnishing misleading information to plan participants "will support a claim for a breach of fiduciary duty" (quoting *Berlin v. Mich. Bell Tel. Co.*, 858 F.2d 1154, 1163 (6th Cir. 1988))). But we are not called upon to decide whether a breach of duty

10

took place. Instead, we must determine whether Ms. Owens could be regarded as a fiduciary. *Moore* does not bear on this determination.

The Sixth Circuit did address fiduciary status in *Sprague v. General Motors Corp.*, 133 F.3d 388 (6th Cir. 1998) (en banc). There, the Sixth Circuit remarked that under *Varity*, an employer "may have acted in a fiduciary capacity when it explained its retirement program to the early retirees." 133 F.3d at 405. But the discussion of the employer's fiduciary status constituted dicta because the court ultimately dismissed the case on the separate ground that the employer had not breached a fiduciary duty, even assuming that such a duty existed. *Id.* at 405-06. We therefore cannot say that the Sixth Circuit has adopted a different view of *Varity* than we do here.

Some courts have interpreted Sixth Circuit case law to expand ERISA's functional-fiduciary provision to encompass persons who lack discretionary authority. *See Van Loo v. Cajun Operating Co.*, 64 F. Supp. 3d 1007, 1017-18 (E.D. Mich. 2014); *Weaver v. Prudential Ins. Co. of Am.*, No. 3:10-CV-438, 2011 WL 4833574, at *7 (M.D. Tenn. Oct. 12, 2011). But we do not regard these opinions as persuasive because their approach would stretch the definition of "fiduciary" beyond any meaningful boundaries.

Rather than follow the lead of those courts, we rely on the plain meaning of the terms "fiduciary" and "discretionary authority [or] . . .

11

responsibility." *See* 29 U.S.C. § 1002(21)(A). In doing so, we share the view of the Department of Labor that calculating benefits at a participant's request does not involve discretionary authority or responsibility over plan administration.

**B.**     **The Lebahns failed to plead that Ms. Owens had discretionary authority or discretionary responsibility.**

Taken as true, the Lebahns' allegations establish only that Ms. Owens was responsible for calculating pension benefits. But merely calculating benefits, without more, does not establish fiduciary status under ERISA. Thus, the facts alleged by the Lebahns are insufficient for liability.

The complaint contains a number of allegations regarding Ms. Owens' authorities and responsibilities:

- "The Pension Consultants were supposed to determine benefits, qualification and other certifications of benefits." Appellants' App'x at 4.

- "Mr. Lebahn contacted Eloise Owens, who at the time was the pension consultant for the National Farmers Union Uniform Pension Plan . . . . The Plan has the authority to manage the plan and, in accordance with that authority, hired Ms. Owens and her company to determine benefits, qualifications and other certifications of benefits. As a pension consultant, Ms. Owens was acting as a functional fiduciary. Ms. Owens indicated that she would make the appropriate calculation and let Lebahn know what his monthly benefits would be. Mr. Lebahn had to contact the pension consultant because the plan was too complicated to determine the benefits without the aid of a consultant." *Id.*

12

- "According to the [sic] Ms. Owens, upon early retirement, Lebahn would be entitled to monthly benefits in the amount of $8444.18. Ms. Owens sent written confirmation of this benefit calculation." *Id.* at 5.

- "In response to Mr. Lebahn's concerns, Ms. Owens verified her numbers and indicated that the actuaries were low and were missing something." *Id.* at 6.

- "In response to [his] application, Mr. Lebahn received a letter from the Pension Consultant for the National Farmers Union Uniform Pension Plan on June 15, 2012, advising him that his pension payment for his retirement beginning on July 1, 2012 would be $8445.39 per month. The pension consultant . . . was acting as a fiduciary and agent of the Plan and informed Mr. Lebahn on the amount he would receive if retiring." *Id.*

Even if these allegations are true, they would not establish that Ms. Owens had discretionary authority or responsibility as required by § 1002(A)(21)(iii). The Lebahns have pleaded only that Ms. Owens responded to Mr. Lebahn's request by calculating his pension-plan benefits, informing him of the results, and verifying the calculations in response to Mr. Lebahn's stated concerns. These allegations assert only that Ms. Owens was responsible for calculating pension benefits and communicating these calculations to plan participants. But that responsibility does not establish fiduciary status under ERISA. And nowhere do the Lebahns otherwise plead or argue that Ms. Owens had any additional authority or responsibility delegated by the plan. Therefore, we affirm the dismissal of the Lebahns' claim for breach of fiduciary duty.

## V.    The Lebahns failed to adequately plead equitable estoppel.

The Lebahns' second claim is for equitable estoppel. The district court dismissed this claim, and we affirm this ruling because the Lebahns do not challenge both of the independent grounds on which the district court based its dismissal.

A plan beneficiary may seek "appropriate equitable relief" to redress ERISA violations or enforce ERISA provisions. *See* ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). It is well established that equitable estoppel is a form of equitable relief available under ERISA § 502(a)(3). *See Jensen v. Solvay Chems., Inc.*, 721 F.3d 1180, 1185 (10th Cir. 2013).

Although we have not definitively identified the elements of an ERISA claim of equitable estoppel, the parties assume that we should apply the elements stated in our unpublished opinion, *Palmer v. Metropolitan Life Insurance Co.*, 415 F. App'x 913 (10th Cir. 2011). Therefore, we assume without deciding that *Palmer* correctly sets out the elements of an ERISA equitable estoppel claim.

Two of these elements are

- awareness of the true facts by the party to be estopped and

- reliance that is detrimental and justifiable.[7]

---

[7]    *Palmer* lists five elements of an ERISA claim for equitable estoppel: 1) conduct or language amounting to a representation of material fact; 2) awareness of the true facts by the party to be

14

The district court held that the Lebahns had not adequately alleged either of these elements. On appeal, the Lebahns challenge the district court's holding with respect to one of these elements (awareness of the true facts by the party to be estopped) but not with respect to the other element (justifiable reliance by the party seeking estoppel).[8]

When a district court dismisses a claim on two or more independent grounds, the appellant must challenge each of those grounds. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 877 (10th Cir. 2004). But the Lebahns have not challenged the district court's ruling on the element of justifiable

---

estopped; 3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended; 4) unawareness of the true facts by the party asserting the estoppel; and 5) detrimental and justifiable reliance by the party asserting estoppel on the representation.

*Palmer v. Metro. Life Ins. Co.*, 415 F. App'x 913, 920 (10th Cir. 2011) (quoting *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1298 (6th Cir. 1991)). Additionally, the Supreme Court has held that "when a court exercises its authority under § 502(a)(3) to impose a remedy equivalent to estoppel, a showing of detrimental reliance must be made." *CIGNA Corp. v. Amara*, 563 U.S. 421, 443 (2011).

[8] At oral argument, the Lebahns' counsel argued that it was inappropriate to resolve the justifiable reliance issue on a motion to dismiss. Oral Argument at 6:46-7:24, *Lebahn v. Nat'l Farmers Union Unif. Pension Plan,* No. 15-3201 (10th Cir. May 3, 2016). But the Lebahns did not make this argument in their appellate briefs. As a result, this argument is waived. *See Fed. Ins. Co. v. Tri-State Ins. Co.*, 157 F.3d 800, 805 (10th Cir. 1998) ("Issues raised for the first time at oral argument are considered waived.").

15

reliance. Thus, even if we were to adopt the Lebahns' position on the second element (awareness of the true facts by the party to be estopped), the Lebahns have given us no basis to disturb the district court's ruling on the first element, that there was no justifiable reliance. In these circumstances, we must affirm. *See id*.; *see also Starkey ex rel. AB v. Boulder Cty. Soc. Servs.*, 569 F.3d 1244, 1252 (10th Cir. 2009) ("When an appellant does not challenge a district court's alternate ground for its ruling, we may affirm the ruling.").

In their reply brief, the Lebahns state that the district court's dismissal order omitted any "discussion of [the justifiable-reliance] element." Appellants' Reply Br. at 9. But as the Lebahns' counsel conceded at oral argument, this statement is incorrect. In its order, the district court expressly considered whether Mr. Lebahn's reliance was justified:

> Moreover, plaintiffs have not set forth sufficient facts which would support a finding that their reliance on Owens' statement was justifiable in light of the fact that the complaint states that Lebahn "questioned the validity of [Owens'] numbers as the monthly benefits Owens had calculated was substantially greater than the annual statements he had been receiving each year." (Doc. 1 at 3). In addition, the Plan unambiguously states the formula to calculate pension benefits. *See Palmer*, 415 Fed. App'x at 921 (no justifiable reliance when Plan documents unambiguously set forth Plan terms).

Appellants' App'x at 240-41.

16

Because the Lebahns have not challenged this part of the ruling, we affirm the dismissal of the equitable estoppel claim.

## VI. Conclusion

We affirm.