**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 17, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JUAN SAUCEDO-MIRANDA, a/k/a
Antonio Garcia-Reyna, a/k/a Jose Lopez,
a/k/a Juan Medina,

      Petitioner,

v.

WILLIAM P. BARR, United States
Attorney General,*

      Respondent.

No. 18-9578
(Petition for Review)

_____

**ORDER AND JUDGMENT**\**
_____

Before **TYMKOVICH**, Chief Judge, **BALDOCK** and **HARTZ**, Circuit Judges.
_____

Juan Saucedo-Miranda, a native and citizen of Mexico, petitions for review of

the decision of the Board of Immigration Appeals (BIA) affirming the denial by the

_____

    \* In accordance with Rule 43(c)(2) of the Federal Rules of Appellate
Procedure, William P. Barr is substituted for Matthew G. Whitaker as the respondent
in this action.

    \*\* After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

immigration judge (IJ) of his applications for asylum, restriction on removal, and relief under the Convention Against Torture (CAT). Exercising jurisdiction under 8 U.S.C. § 1252, we deny review.

## BACKGROUND

Mr. Saucedo-Miranda is subject to removal because he entered this country without being admitted or paroled after inspection. *See* 8 U.S.C. § 1182(a)(6)(A)(i). After receiving a notice to appear, he conceded removability and applied for asylum, restriction on removal, and CAT relief.

Mr. Saucedo-Miranda's applications are based on violent attacks on him and his family in Mexico. First, in or about 1994, when he was ten, his father's employer raped him and threatened to fire his father if he spoke about the attack. Second, in more recent years multiple members of his family suffered violent attacks. In 2011 intruders entered the family's home, beat several family members, and kidnapped his brother Omar for three days. The next year, his brother Iran was robbed, beaten, and shot as he came home from driving his taxi, and one of the attackers later fired shots outside the family's house. In 2013 his brother-in-law was kidnapped, then tortured and killed when the family could not assemble a ransom. In 2017 his father was robbed and beaten while shopping. And in late 2017 or early 2018 his family received a phone call stating that Mr. Saucedo-Miranda himself had been kidnapped.

For both asylum and restriction on removal, a petitioner must demonstrate he has been or will be harmed because of one or more protected grounds listed in the statutes. *See* 8 U.S.C. § 1158(b)(1)(B)(i) (asylum); *id.* § 1231(b)(3)(A) (restriction

2

on removal).  As relevant to this proceeding, Mr. Saucedo-Miranda chose the

protected category of "membership in a particular social group,"

*id.* § 1158(b)(1)(B)(i); *id.* § 1231(b)(3)(A), and proposed two social groups.  One was

"[c]hild rape victims who were without legal resources in country of removal due to

stigmatization by society and Governmental inability to protect children."  Admin. R.

Vol. 1 at 193.  The other group was his family:  "Family was targeted by Cartel for

quota and ransom.  Family united against Cartel and were targeted as a result for

retribution such as [Mr. Saucedo-Miranda's] father being beaten, his brother in law

being kidnapped and killed, and his brother being assaulted."  *Id*.

The IJ held that the asylum claim was time-barred, but he considered the

proposed social groups in connection with restriction on removal.  He gave several

reasons for rejecting the child-victim group as a cognizable "particular social group."

And although the IJ held that the Saucedo-Miranda family was a cognizable

"particular social group," he found that Mr. Saucedo-Miranda's family members

were not harmed on account of their membership in the family but instead were

simply the victims of criminals seeking financial gain.  Finally, the IJ rejected

Mr. Saucedo-Miranda's claim for CAT relief.  The IJ interpreted the claim as being

based on fears of cartel violence and held that Mr. Saucedo-Miranda had failed to

show that (1) the cartels would be motivated to torture him, (2) he would be unable to

relocate to a different part of Mexico to avoid the cartels, and (3) any torture would

be at the instigation or with the consent of the Mexican government.  The IJ further

stated that Mr. Saucedo-Miranda "does not appear to claim that he will be tortured on

3

account of being raped by his father's employer in 1994," but if he had intended such a claim, the IJ "would find that since [he] was unable to demonstrate a likelihood of future harm for purposes of [restriction on removal], he has necessarily failed to meet the higher standard under the CAT." Admin. R. Vol. 1 at 81 n.5.

The BIA affirmed the denial of all forms of relief. It agreed with the IJ that the child-victim group was not a cognizable "particular social group." It held that the group is impermissibly "defined by its members' persecution," *id.* at 3, and that it "is not defined with sufficient particularity or social distinction," *id.* at 4. Further, "the proposed group is overbroad and amorphous, as legal resources and government protection can encompass many varying manifestations." *Id.*

The BIA also rejected the claims based on family status, upholding the finding that the attacks on the family members were criminal actions rather than violence directed toward the family as such. "The Immigration Judge did not clearly err in concluding that the individuals and alleged entities—some identified, others not— that harmed [Mr. Saucedo-Miranda's] family members would have done so irrespective of the familial relationship." *Id.* at 5. The BIA concluded that Mr. Saucedo-Miranda "did not establish that his family members were harmed because of their family relationship, or that he will be targeted for future harm in Mexico on account of his family ties." *Id.*

Finally, the BIA affirmed the denial of CAT relief. Although Mr. Saucedo-Miranda argued explicitly that his rape constituted torture that entitled him to CAT relief, the BIA did not address that argument. Instead, it focused on the

4

prospect of torture by the cartels, holding that "general cartel violence in Mexico is insufficient to warrant Convention Against Torture protection" and that "[t]he Immigration Judge did not clearly err in finding that Mexican authorities are aggressively targeting drug cartels." *Id.*

## DISCUSSION

### I.      Standard of Review

"Because a single member of the BIA affirmed the IJ's decision under 8 C.F.R. § 1003.1(e)(5), we review only the BIA's opinion and not grounds stated in the IJ decision but not relied upon by the BIA." *Velasco v. Holder*, 736 F.3d 944, 946 (10th Cir. 2013). Accordingly, we consider only the arguments concerning the grounds the BIA relied on, not arguments addressing issues outside of the BIA's decision, such as the timeliness of the asylum application.

"We review the BIA's legal determinations de novo, and its findings of fact under a substantial-evidence standard." *Niang v. Gonzales*, 422 F.3d 1187, 1196 (10th Cir. 2005). The substantial-evidence standard requires us to ensure "that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole." *Id.* (internal quotation marks omitted). "The BIA's findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (internal quotation marks omitted).

5

**II.     Asylum and Restriction on Removal**

**A.     Child-Victim Group**

The first issue before the BIA was whether the proposed child-victim group was a cognizable "particular social group."  Mr. Saucedo-Miranda's opening brief, however, fails to adequately challenge the BIA's rejection of this proposed group. The BIA gave several reasons for rejecting the proposed group, but the brief does not attack all of those grounds.  For example, it says nothing about the BIA's first reason for rejecting the proposed group—that it impermissibly defines itself circularly, solely by the harm that group members experienced.  *See In re W-G-R-*, 26 I. & N. Dec. 208, 215 (BIA 2014) ("Persecutory conduct aimed at a social group cannot alone define the group, which must exist independently of the persecution."), *vacated in part on other grounds sub nom. Reyes v. Lynch*, 842 F.3d 1125, 1143 (9th Cir. 2016).

When a tribunal rejects a claim on multiple independent grounds, the petitioner or appellant must challenge each ground.  *See Lebahn v. Nat'l Farmers Union Unif. Pension Plan*, 828 F.3d 1180, 1188 (10th Cir. 2016).  The failure to do so means that we must deny review of the BIA's rejection of the child-victim group: even if Mr. Saucedo-Miranda were to prevail on the arguments he makes about the proposed group, the BIA's decision still would stand on the grounds he does not challenge.  *See id.* (stating that where a party argues one ground but gives the court "no basis to disturb" another of the underlying rulings, "we must affirm").

6

## B.    Family Group

The BIA next rejected the claims based on family status.  In determining that the Saucedo-Miranda family could constitute a cognizable "particular social group," it relied on *In re L-E-A-*, 27 I. & N. Dec. 40 (BIA 2017).  But after the parties filed their briefs in this proceeding, the Attorney General reversed *L-E-A-* in part, holding that "an alien's family-based group will not constitute a particular social group unless it has been shown to be socially distinct in the eyes of its society, not just those of its alleged persecutor."  *In re L-E-A-*, 27 I. & N. Dec. 581, 582 (A.G. 2019); *see also id.* ("[A]n alien's immediate family . . . generally will not be distinct on a societal scale, whether or not it attracts the attention of criminals who seek to exploit that family relationship in the service of their crimes.").

We need not consider the effect of the Attorney General's recent decision, however, because substantial evidence supports the BIA's decision that Mr. Saucedo-Miranda failed to show that his family suffered the attacks because they were members of the family, rather than because the perpetrators were criminals who simply sought money and property.  An applicant for asylum and restriction on removal must show a nexus between the harm suffered or feared and a protected status.  *See* 8 U.S.C. § 1158(b)(1)(B)(i) (stating, for asylum, "the applicant must establish that . . . membership in a particular social group . . . was or will be at least one central reason for persecuting the applicant"); *id.* § 1231(b)(3)(A) (restricting removal to a country if "the alien's life or freedom would be threatened in that country because of the alien's . . . membership in a particular social group").

7

During the hearing, Mr. Saucedo-Miranda admitted that he had no personal knowledge of who committed the crimes against his brothers, brother-in-law, and father. He did not know if anyone witnessed his brother-in-law's kidnapping, and the ransom calls were anonymous. Neither he nor his family knew who invaded the house and kidnapped his brother Omar. He also admitted that he had no personal knowledge of the person who was arrested and convicted for shooting outside his family's house or whether he was a member of a gang or cartel. And he did not know if any of the attackers had ever said anything to explain why they were attacking, other than that they wanted money.

In addition, Mr. Saucedo-Miranda characterized the violence against his brother Iran and his father as robberies that resulted in beatings because the victims had no money, and his brother-in-law's murder as the result of the family's inability to pay a ransom. He stated that "all over Mexico, no matter where you are, you see how they are murdering people, kidnapping people, asking for money, and it doesn't matter whether you're in the city or far from it." Admin. R. Vol. 1 at 126.

Because the record fails to "demonstrate[] that any reasonable adjudicator would be compelled to conclude" that Mr. Saucedo-Miranda's family was harmed because they were members of the family, rather than for some other motive such as financial gain, we must uphold the BIA's decision. *Niang*, 422 F.3d at 1196.

8

## III. CAT Relief

The BIA also denied Mr. Saucedo-Miranda's request for CAT relief. "The CAT prohibits the return of an alien to a country where it is more likely than not that he or she would be tortured." *Id.* (internal quotation marks omitted).

> Torture is defined as [] any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

*Id.* (internal quotation marks omitted). For CAT relief a petitioner need not show that torture will be based on a statutorily protected ground. *See id.*

Mr. Saucedo-Miranda renews the argument he made before the BIA, that he is entitled to CAT relief because of his childhood rape. As stated above, the BIA did not address this argument, instead focusing on whether he was more likely than not to be tortured by the cartels. Because "we must be cautious not to assume the role of the BIA. . . [,] when it has failed to address a ground raised by an applicant in support of [his] claim, we should ordinarily not reverse on that ground but should instead remand if the ground appears to have any substance." *Id.* at 1197. But there is no substance to Mr. Saucedo-Miranda's CAT argument.

Mr. Saucedo-Miranda appears to claim torture from both the rape itself and the continuing mental trauma resulting from the rape. It is doubtful that the BIA could conclude that the rape qualifies as "torture" for purposes of the CAT, as the record

9

would not support a finding that the criminal perpetrator committed the rape for a purpose proscribed by CAT (for example, to obtain a confession, for punishment, or because of discrimination). Even assuming, however, that the BIA could conclude the rape itself qualifies as "torture," past torture does not establish a presumption of future torture and does not automatically entitle Mr. Saucedo-Miranda to CAT relief. *See id.* at 1196, 1202.

Mr. Saucedo-Miranda identifies nothing in the record to show that, even though he is now an adult male, he is more likely than not to be raped in Mexico. Rather, with regard to future harm, he seems to assert that the rape continues to cause him mental suffering that would qualify as torture. *See* Opening Br. at 23 (stating that his rape resulted in "extreme emotional trauma . . . which can only be described as meeting and satisfying the definition of torture"). But this conclusory assertion fails to explain why a continuing consequence of past torture itself necessarily constitutes torture. Further, Mr. Saucedo-Miranda fails to make any showing that any future mental suffering would be inflicted for a purpose proscribed by CAT or would involve governmental consent or acquiescence.

For these reasons, we decline to remand the CAT claim for the BIA's further consideration.

## CONCLUSION

The motion to proceed without prepayment of fees and costs is granted.  The petition for review is denied.

Entered for the Court


Harris L Hartz
Circuit Judge