FILED
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**December 21, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

_____

DALJEET SINGH,

Petitioner,

v.

MERRICK GARLAND,
United States Attorney General,

Respondent.

No. 23-9523
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, Chief Judge, **HARTZ**, and **MORITZ**, Circuit Judges.
_____

Daljeet Singh, an Indian national, seeks review of the Board of Immigration

Appeals' (BIA) denial of asylum and restriction on removal based on an immigration

judge's (IJ) adverse credibility finding.  Exercising jurisdiction under 8 U.S.C.

§ 1252(a), we deny the petition for review.[1]

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

[1] Singh also applied for and was denied relief under the Convention Against
Torture.  He does not challenge that ruling.  See Pet'r Opening Br. at 5.

I

Singh is a Sikh from Punjab, India. He is a member of the Shiromani Akali Dal – Amritsar (Mann) Party, which demands a separate country for Sikhs. When he arrived in the United States in 2013, he was interviewed by a border agent and claimed to have been harassed by members of the ruling opposition Badal Janta Party (BJP). Singh stated that members of the BJP had called him three times on the phone and, in 2009, they followed him, stole his bike, and slapped him three times. The border agent asked Singh, "Have you ever been arrested by the police in any other country?" Admin. R. at 502. Singh replied, "No ma'am never." *Id.*

A week later, however, on September 23, 2013, Singh stated during a credible fear interview that, in fact, he had been arrested by police in India—twice. He said he attended Mann Party meetings in 2008 when the police arrested him, beat him, and accused him of "provoking the public against the government." *Id.* at 496.

The Department of Homeland Security (DHS) charged Singh with being removable for seeking to enter the United States without valid entry documents. *See* 8 U.S.C. § 1182(a)(7)(A)(i)(I). Singh conceded the charge but, in January 2018, he applied for asylum and restriction on removal. A question on his asylum application asked, "Have you or your family members ever been accused, charged, arrested, detained, interrogated, convicted and sentenced, or imprisoned in any country other than the United States?" Admin. R. at 463. Contrary to the answer he gave during his credible fear interview, when he said he had been arrested twice, Singh answered, "No." *Id.*

2

Ten months later, however, Singh reversed himself once again. In October 2018, he filed a declaration stating he had been arrested in June and December 2008, both times after attending Mann Party meetings. He stated in his declaration that during the first arrest, the police hit him and accused him of provoking the public to turn against the government. He stated that after his second arrest, the police beat him with a leather belt and wooden sticks while he was in custody.

Singh appeared before an IJ and testified that police arrested him in India in June and December 2008. He said that during the December arrest, police beat him with a leather belt and sticks and told him to quit the Mann Party and "start following BJP." *Id.* at 130. He told the IJ he was detained for two days after the June arrest and three days after the December arrest. He said that after he was released, he was treated at the hospital for bruises to his legs, arms, and back, and for a high fever. He also testified that he then started receiving phone threats, and that later in December 2009, BJP members stopped him when he was returning from a Mann Party meeting and started slapping him, causing him to fall off his bike. After that incident, he moved to live with his aunt for eight or nine months and stopped attending Mann Party meetings. He then moved to England for two years, returned to India, and eventually made his way to the United States.

On cross-examination, counsel for DHS asked Singh why he failed to mention his arrests to the border agent. Singh replied that he may have misunderstood that the agent was asking when he started being harassed by the BJP, rather than the police. Counsel for DHS also asked Singh why he omitted the arrests and the police beatings

from his asylum application.  He replied that he did not know why the information was omitted, he thought the application was asking about the political parties, and he wanted to keep his application short.  Singh stated that he intended to elaborate on his experiences at his hearing.

After considering this testimony and other evidence, the IJ denied relief and ordered Singh removed to India.  The IJ determined that Singh was not credible because his testimony was inconsistent with his asylum application, which made no mention of his arrests or the police beatings, even though they were central to his claim of persecution.  The IJ was unpersuaded by his explanation that he intended to elaborate at his hearing, reasoning that it would be "acceptable to provide . . . a more cursory description of past persecution in an initial application," and then provide more detail later, but not to completely omit any mention of the arrests and beatings, one of which led to him being hospitalized.  *Id.* at 53.  As for Singh's documentary evidence, the IJ concluded it failed to independently satisfy Singh's burden of proof, and in any event, he did not warrant relief as a discretionary matter because he could have applied for asylum before traveling to the United States but he did not.

The BIA affirmed.  The BIA found no clear error in the IJ's adverse credibility finding, explaining that Singh claimed at his hearing, in his written declaration, and during his credible fear interview that he was twice arrested, detained, and beaten by the police in 2008, but he did not mention these events in his border interview and his asylum application.  Like the IJ, the BIA was not persuaded by Singh's explanations for failing to disclose these events during his border interview and on his application,

4

noting that he claimed to misunderstand the border agent and wanted to keep his application short, but both the border agent and the application specifically asked if he had ever been arrested, and both times Singh answered "no." *Id.* at 4 (internal quotation marks omitted). The BIA emphasized that it would have been reasonable to expect Singh to disclose his arrests if they had occurred, and that he gave inconsistent statements and omitted details about the arrests, which were material to his claim of persecution. The BIA thus upheld the IJ's adverse credibility finding, denied relief, and ordered Singh removed to India.

## II

We review the BIA's decision as the final agency action "and limit our review to the grounds relied on by the BIA." *Htun v. Lynch*, 818 F.3d 1111, 1118 (10th Cir. 2016). "But, when seeking to understand the grounds provided by the BIA, we are not precluded from consulting the IJ's more complete explanation of those same grounds." *Id.* (internal quotation marks omitted).

At this juncture, we pause to reject the government's argument that we should not address Singh's asylum claim because he failed to exhaust it. Specifically, the government maintains that the IJ's alternative ruling that Singh did not warrant asylum as a matter of discretion "is dispositive of [his] claim for asylum," and that he failed to exhaust any challenge to that ruling. Resp. Br. at 22. But Singh still presents no challenge to the IJ's discretionary ruling, and there is no requirement that he exhaust arguments he does not raise. The government's argument is thus not so much an exhaustion argument as an argument that Singh's failure to challenge one

5

basis for the agency's decision forecloses review of an alternative ground for the same decision. *See Lebahn v. Nat'l Farmers Union Unif. Pension Plan*, 828 F.3d 1180, 1188 (10th Cir. 2016) (holding that when a tribunal rejects a claim on multiple independent grounds, the petitioner must challenge each ground); *Murrell v. Shalala*, 43 F.3d 1388, 1389-90 (10th Cir. 1994) (party's failure to challenge determination that is "by itself, a sufficient basis for" denying relief forecloses success on appeal). Contrary to the government's assertion, however, the BIA did not rely on the IJ's discretionary ruling to affirm; rather, the BIA affirmed the denial of relief based solely on the IJ's adverse credibility finding and merely noted that Singh did not challenge the IJ's alternative discretionary ruling. *See* Admin. R. at 3 ("We affirm the [IJ's] decision denying the respondent's applications for asylum and [restriction on] removal . . . due to his lack of credibility."); *id.* at 5 n.3 (noting Singh had "not addressed [or] challenged" the discretionary ruling). Our review is confined to the grounds relied upon by the BIA in issuing the final agency decision. *See Htun*, 818 F.3d at 1118. Because the BIA did not rely on the IJ's discretionary ruling, that ruling is not before us, and Singh's failure to raise it does not foreclose our review of the BIA's decision.

Proceeding with our analysis, we review the agency's legal determinations de novo and its factual findings for substantial evidence. *Karki v. Holder*, 715 F.3d 792, 800 (10th Cir. 2013). "Credibility determinations are factual findings subject to the substantial evidence test." *Sarr v. Gonzales*, 474 F.3d 783, 789 (10th Cir. 2007) (ellipsis and internal quotation marks omitted). "We do not weigh the evidence or

6

evaluate witnesses' credibility." *Id.* (ellipsis and internal quotation marks omitted). Rather, administrative findings are "'conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Garland v. Ming Dai*, 141 S. Ct. 1669, 1677 (2021) (quoting 8 U.S.C. § 1252(b)(4)(B)).

No reasonable adjudicator would be compelled to find that Singh offered credible testimony. "If the [arrests and police beatings] on which [Singh] bases his claim[s] had actually occurred, it would defy common sense for [Singh], who was assisted by counsel, to omit any mention of [those events] on his [asylum] application . . . particularly when the application explicitly asked for such information." *Ismaiel v. Mukasey*, 516 F.3d 1198, 1205 (10th Cir. 2008). Indeed, Singh did not simply *omit* the information—the asylum application specifically asked if he had ever been arrested or detained, and he expressly *denied* that he had by answering, "No." The same is true of his interview with the border agent: Singh told the border agent he had never been arrested, which is inexplicable, given that his claim was largely premised on the two claimed arrests and police beatings. *See id.* (concluding that the adverse credibility finding was "eminently reasonable" because the petitioner testified that he had been beaten and detained, but he omitted these facts from his asylum application).

Nor would any reasonable adjudicator be compelled to believe Singh's explanations for his failure to mention the arrests and beatings at his border interview and in his asylum application. The BIA concluded that his testimony that he thought the questions in the interview and application pertained only to his and to the rival

7

political parties, not to the police, was "undermined" by his testimony that the police "told him that they wanted him to join the . . . BJP," Admin R. at 4 (parentheses and internal quotation marks omitted), and the fact that the border agent specifically asked Singh if he had "*ever* been arrested by the police in another country, *id.* at 502 (emphasis added). Singh unequivocally replied, "No ma'am *never*," *id.* (emphasis added). And given that the information about his arrests and beatings was not a "minor detail" and was instead critical to "his claim of persecution," the BIA did not believe Singh's explanation that he omitted it from his asylum application because he wanted to keep it short. *Id.* at 4. We cannot fault the BIA for being unpersuaded by these explanations. *See Igiebor v. Barr*, 981 F.3d 1123, 1135 (10th Cir. 2020) (upholding adverse credibility finding where the alien's explanations "only created further questions as to his honesty").

Still, Singh says the BIA overemphasized these inconsistencies. He contends the border agent asked when the BJP began harassing him, he answered 2009, and he insists he made no mention of the 2008 arrests because he was focused on the BJP, not the police. But this is essentially the same explanation the BIA rejected, and we will not reweigh the evidence or reevaluate his credibility. *Sarr*, 474 F.3d at 789.

To the extent Singh asserts he may have misunderstood that the border agent was asking whether he had ever been arrested for a crime, he did not raise that argument before the BIA, so we will not now consider it. *See Martinez-Perez v. Barr*, 947 F.3d 1273, 1282 (10th Cir. 2020) ("[A] petitioner must exhaust all administrative processes available to hear his arguments before he may seek to bring

8

those arguments to court." (internal quotation marks omitted)). And to the extent he suggests the BIA failed to consider his documentary evidence, particularly affidavits from his mother and two neighbors, and whether that evidence corroborated his testimony, the argument is unavailing. After affirming the IJ's adverse credibility finding, the BIA determined that "the supporting record evidence did not suffice to independently and *reliably* establish his claim . . . ." Admin. R. at 5 (emphasis added). The IJ had explained that Singh's affidavits from his mother and neighbors lacked detail and were written many years after the events they purport to corroborate. Based on our review of the evidence, we cannot say any reasonable adjudicator would be compelled to conclude otherwise. The balance of Singh's arguments essentially ask us to reweigh the evidence and his explanations, which we will not do. *See Sarr*, 474 F.3d at 789.

III

Accordingly, we deny the petition for review.

Entered for the Court

Nancy L. Moritz
Circuit Judge