**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**July 14, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

MERCEDES VIDANA VIDANA,

    Petitioner,

v.

MERRICK B. GARLAND,
United States Attorney General,

    Respondent.

No. 20-9614
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **KELLY**, and **CARSON**, Circuit Judges.
_____

Petitioner Mercedes Vidana Vidana filed applications for asylum, restriction

on removal,[1] and protection under the Convention Against Torture (CAT). An

Immigration Judge (IJ) denied relief, and the Board of Immigration Appeals (BIA)

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Restriction on removal used to be called "withholding of removal." *Neri-Garcia v. Holder*, 696 F.3d 1003, 1006 n.1 (10th Cir. 2012) (internal quotation marks omitted).

dismissed her appeal of the IJ's order. She now seeks review of the BIA's order.

Exercising jurisdiction under 8 U.S.C. § 1252, we deny the petition for review.

## BACKGROUND

Petitioner first entered the United States illegally in 1999, without inspection. About twenty years later, she returned to Mexico with her United States citizen husband for a consular interview based on a visa application he had filed on her behalf. At the interview, she admitted she and her husband had paid a smuggler for her and her son to cross into the United States. As a result, the officer told her she would need to obtain a waiver of inadmissibility. After the interview, Petitioner spoke to a person who said he was an attorney associated with the hotel in Juarez, Mexico, where she and her husband were staying. They gave him a $10,000 fee and documentation he said he needed to file the waiver application.

Petitioner's husband returned to the United States, and she went to Vera Cruz, Mexico to visit her mother. While there, cartel members who had previously threatened to kill her if she did not pay $50,000 ransom for her son saw her arrive and left a note demanding the money. She went back to the hotel in Juarez to wait for the waiver. The cartel returned to the mother's house twice to look for Petitioner. Petitioner did not report these events to Mexican law enforcement.

When Petitioner asked hotel representatives for a receipt for the waiver application, she learned that the hotel was associated with a cartel (a different cartel than the one that attempted to extort her in Vera Cruz), that no waiver application had been filed, and that she had to pay the cartel $1500 per month. Petitioner reported

these incidents to police. An officer said he would prepare a line-up for her to identify the perpetrators, but questioned whether she wanted to make a report against the cartel, explaining that the police could "not guarantee[]" her safety because "these people are out of control." Admin. R., vol. I at 165. The officer advised her that "another option [was to] just flee" because "these people [are] going to end up killing you." *Id.* She "tore up the report." *Id.* at 166.

Petitioner returned to the hotel and worked to pay the $1500 monthly extortion. She complied with the cartel's demands because she was afraid that if she did not cooperate it would go after her family. After several months, the power went off in her room. She thought the cartel was looking for her, so she hid under the bed. Two men, one of whom she recognized as the man who took her $10,000 for the waiver application, came in the room but left after remarking that she was not there.

Petitioner fled to Tijuana, where her aunt lived. She could not remember her aunt's address, so she went to a hotel. A man at the hotel said he knew she was not from there and told her to leave because the hotel was run by the cartel. She went to a nearby restaurant where another man sat next to her and "said, I need you to follow me. It's your choice. If you want to do it the hard way or the easy way." *Id.* at 171.

The man took her to a store where cartel members told her they were going to use her as a prostitute across the border. They took her picture and prepared documents for her to use to cross the border. One of them "took out a weapon," and they threatened to kill her if she resisted. *Id.* at 172. Two men eventually drove her to the border and directed her to a tunnel where they said she would find the

3

immigration officials they had "paid off." *Id.* at 172-73. She ran and the men followed her. When she approached border officials and gave them the passport prepared by the cartel, they said she was not the person on the passport and handcuffed her. Once in another room, Petitioner gave the officers information about her true identity and told them she had been kidnapped. She recognized one of the United States Border Patrol agents in the room as "one of the kidnappers." *Id.* at 175. She told the officers the men who took her to the border were "trafficking people," "making women prostitute themselves," and "killing women." *Id.* The man she recognized as one of the kidnappers told her to "shut up" and accused her of being a criminal. *Id.* at 175-76.

Notwithstanding the kidnapper's accusation, an asylum officer interviewed her and found she had a credible fear of returning to Mexico. The Department of Homeland Security placed her in removal proceedings, charging her with removability as an individual not in possession of valid travel or entry documents and as an individual who falsely represented herself as a United States citizen for the purpose of obtaining an immigration benefit. After she admitted removability, the IJ sustained the first charge and held the second in abeyance. Petitioner then filed her applications for asylum, restriction on removal, and CAT protection. She alleged she was afraid that if she returns to Mexico, she will be targeted and eventually killed by the men who threatened her previously, and she asserted that Mexican police cannot protect her and are largely corrupt.

The IJ found Petitioner credible but concluded she did not qualify for asylum, restriction on removal, or CAT relief.  The BIA affirmed the IJ's order and dismissed Petitioner's appeal.

## DISCUSSION

When, as here, a three-member panel reviews the IJ decision, "the BIA opinion completely super[s]edes the IJ decision for purposes of our review." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1203 (10th Cir. 2006).  We review the BIA's legal decisions de novo and its findings of fact under a substantial-evidence standard. *Rodas-Orellana v. Holder*, 780 F.3d 982, 990 (10th Cir. 2015).  Under that standard, its "findings [are] conclusive unless any reasonable adjudicator would be compelled to reach a contrary conclusion." *Aguilar v. Garland*, 29 F.4th 1208, 1211 (10th Cir. 2022) (internal quotation marks omitted).

## A. Asylum

An applicant is eligible for asylum if she is a "refugee" within the meaning of the INA.  *See* 8 U.S.C. § 1158(b)(1)(A).  An applicant qualifies as a refugee if she is unable or unwilling to return to her country of nationality because of "persecution or a well-founded fear of persecution on account of" any of five protected grounds, including "membership in a particular social group."  8 U.S.C. § 1101(a)(42).

The applicant "bear[s] the burden of persuasion and must provide direct or circumstantial evidence of the persecutors' motives." *Orellana-Recinos v. Garland*, 993 F.3d 851, 855 (10th Cir. 2021) (internal citation omitted). Persecution is on account of a protected ground if the ground "was or will be at least one central reason

for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i). The Board has interpreted "'one central reason' to mean the protected ground cannot play a minor role in the alien's past mistreatment or fears of future mistreatment." *Karki v. Holder*, 715 F.3d 792, 800-01 (10th Cir. 2013) (internal quotation marks omitted). Thus, to satisfy the nexus requirement, the applicant must show that her past or feared future persecution is because of the protected status and that the protected ground is not "incidental, tangential, superficial, or subordinate to" some other, unprotected reason for harm. *Orellana-Recinos*, 993 F.3d at 855 (internal quotation marks omitted).

The BIA has emphasized that "it is important to distinguish between the inquiry into whether a group is" a cognizable particular social group (PSG) and the "question whether a person is persecuted 'on account of' membership in a [PSG]." *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 242 (B.I.A. 2014). In other words, the existence of a social group and a nexus between that group and the petitioner's claim of persecution are independent requirements that the BIA assesses separately. *Id.* And because an applicant must satisfy both requirements to make a cognizable claim for asylum, *see* 8 U.S.C. § 1101(a)(42), her failure to satisfy either is dispositive.

Here, Petitioner's asylum and restriction on removal applications alleged that she suffered past persecution in Mexico and is likely to suffer future persecution if she returns to Mexico based on her membership in one of three proposed PSGs that she defined as (1) Mexican women who are trafficked for prostitution; (2) Mexican women who are by themselves; and (3) returning Mexicans with relatives in the

6

United States. The IJ denied her applications, concluding she did not establish past persecution and could not show a well-founded fear of future persecution on account of a protected ground both because her proposed PSGs were not cognizable and because she did not establish a nexus between the harm she suffered and her membership in those groups. In support of the latter conclusion, the IJ found that the people who victimized her were criminals motivated by greed, not by her gender, her aloneness, or the fact that she has American relatives.

The BIA agreed that Petitioner's proposed groups are not cognizable because they are impermissibly defined by the fact of persecution (the first group) or lack the requisite particularity and social distinction (the second and third groups). And it found no clear error in the IJ's finding regarding the reason for the cartels' harassment of her, agreeing that she was "the victim of criminal extortion," not persecution on account of a protected ground. Admin. R., vol. I at 4; *see Matter of N-M-*, 25 I. & N. Dec. 526, 532 (B.I.A. 2011) (explaining that an IJ's finding regarding a persecutor's motivation is a finding of fact that the BIA reviews for clear error). The BIA thus affirmed the IJ's denial of Petitioner's applications on two independent grounds: failure to establish her membership in a cognizable PSG, and failure to show a nexus between her membership in her proposed groups and the persecution she suffered.

When a tribunal rejects a claim on multiple independent grounds, the petitioner must challenge each ground. *Lebahn v. Nat'l Farmers Union Unif. Pension Plan*, 828 F.3d 1180, 1188 (10th Cir. 2016). The failure to challenge a determination that is "by itself, a sufficient basis for" denying relief forecloses

success on appeal. *Murrell v. Shalala*, 43 F.3d 1388, 1390 (10th Cir. 1994). Here,

Petitioner raises several challenges to the BIA's social-group ruling, but she does not

separately challenge its determination that any harm she suffered or fears is due to

criminal victimization and not on account of a protected ground. Her mention of the

BIA's nexus determination "in passing in [the] opening brief" is insufficient to

challenge that determination. *Kabba v. Mukasey*, 530 F.3d 1239, 1248 (10th Cir.

2008). She has thus waived any challenge to the BIA's dispositive nexus ruling. *See*

*Krastev v. INS*, 292 F.3d 1268, 1280 (10th Cir. 2002) ("Issues not raised on appeal

are deemed to be waived.").

In any event, the record supports the BIA's determination. It found no clear

error in the IJ's finding that the gangs had ordinary criminal motives for harassing

Petitioner—they extorted her and attempted to force her into prostitution because

they wanted money. Petitioner points to no evidence that the gangs were motivated

by the fact that she is Mexican, a woman, alone, or has American family members.

And her evidence regarding sex trafficking of victims from different countries across

the United States border, background documents describing organized crime and

victims of cartel activity in Mexico, and a Department of State Human Rights Report

describing discrimination and abuse against women in general does not establish that

the gangs targeted her on account of a protected ground. *See Orellana-Recinos*,

993 F.3d at 856 (membership in a PSG "should not be considered a *motive* for

persecution if the persecutors are simply pursuing their distinct objectives and a

victim's membership in the group is relevant only as a means to an end—that is, the

membership enables the persecutors to effectuate their objectives"). We cannot say that a reasonable adjudicator would be compelled to reject the BIA's determination. *See Aguilar*, 29 F.4th at 1211.

Because the record supports the BIA's unchallenged dispositive determination that Petitioner failed to establish a nexus between her persecution and her membership in her proposed PSGs, we need not address her challenges to its determination that those groups are not cognizable. *See Lebahn*, 828 F.3d at 1188 (stating that where a party argues one ground but gives the court "no basis to disturb" another of the underlying rulings, "we must affirm"); *see also INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (per curiam) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach."); *Griffin v. Davies*, 929 F.2d 550, 554 (10th Cir. 1991) ("We will not undertake to decide issues that do not affect the outcome of a dispute.").

## B. Restriction on Removal

To qualify for restriction on removal, an applicant must show a "clear probability" of persecution on account of one of the statutorily protected grounds. *Rodas-Orellana*, 780 F.3d at 987 (internal quotation marks omitted). This is a higher burden of proof than the standard for asylum, which requires the applicant to prove only that such persecution is a "reasonable possibility." *Id.* (internal quotation marks omitted). Consequently, Petitioner's inability to meet the asylum burden necessarily forecloses meeting the greater restriction burden. *See id.* We thus deny her challenge to the BIA's finding that she is not eligible for restriction on removal.

9

### C. CAT Relief

The CAT "prohibits the return of an alien to a country where it is more likely than not that he will be subject to torture by a public official, or at the instigation or with the acquiescence of such an official." *Karki*, 715 F.3d at 806 (internal quotation marks omitted). The applicant has the burden to establish her eligibility for CAT relief. 8 C.F.R. § 208.16(c)(2).

"Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 1208.18(a)(7). "[W]illful blindness suffices to prove acquiescence." *Karki*, 715 F.3d at 806 (internal quotation marks omitted). A government's inability to offer complete protection does not demonstrate governmental acquiescence. *Tamara-Gomez v. Gonzales*, 447 F.3d 343, 351 (5th Cir. 2006). Nor does general evidence of corruption and a lack of sufficient resources for law enforcement to effectively combat crime. *Cruz-Funez v. Gonzales*, 406 F.3d 1187, 1192 (10th Cir. 2005). The BIA's CAT "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (internal quotation marks omitted).

The IJ denied Petitioner's request for CAT protection, finding that the harm she suffered did not rise to the level of torture and that there was no evidence the Mexican government was involved with her harmful experiences in Mexico or would acquiesce in any future torture. On administrative appeal, she challenged both the

10

torture and acquiescence determinations, but the BIA denied her request for CAT

relief solely on the ground that she failed to demonstrate the requisite state action.[2]

Petitioner maintains that the Mexican government "is unable to control

organized crime groups and their targeting of most vulnerable populations," Pet'r's

Br. at 21, and that the cartels victimized her "at the instigation of or with the

acquiescence of a public official or a person acting in an official capacity," *id.* at

22-23 (footnote omitted). But she presented no evidence supporting her assertion

that the government participated in her victimization. And the record supports the

BIA's conclusion that she failed to establish that the government acquiesced in it.

The police were willing to accept her report of threats and extortion and to engage in

an investigation, but she decided not to file a report because the police could not

guarantee her safety. The BIA concluded that the warning that police may not be

able to protect her if she opened an investigation did not constitute governmental

acquiescence. We find no error in that determination. *See Ferry v. Gonzales*,

457 F.3d 1117, 1131 (10th Cir. 2006) (upholding agency's determination that the

government's recognition of a threat and providing of a security grant used to

reinforce Ferry's property demonstrated that the government was not acquiescing in

---

[2] Our review is limited to grounds relied on by the BIA. *See Uanreroro*, 443 F.3d at 1204. Because the BIA did not address either whether Petitioner showed that her claims of past torture demonstrate a clear probability of future torture or whether it is more likely than not that she will suffer harm amounting to torture if she returns to Mexico, we do not consider her arguments that the harm she suffered in the past and will suffer if she returns constitutes torture.

torture).  And Petitioner has identified no evidence that would compel a reasonable

adjudicator to conclude that the Mexican government would acquiesce in her torture.

## CONCLUSION

We deny the petition for review.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge